Anthony **HESSMAN**, Harold A. Goodman, Frederick Mootz, Arthur Williams, Forrest Baker, In their representative capacities as members of Local No. 171, Metal Polishers' Union, Plaintiffs,

v.

Gary **CAMPBELL**, Director of Internal Revenue, Defendant.

Civ. No. 3500.

United States District Court S. D. Indiana, Indianapolis Division.

June 22, 1955.

Jacobs & Noland, Olive, Knox & O'Hara, Indianapolis, Ind., for plaintiffs.

Jack C. Brown, U. S. Atty., by Don Tabbert, Asst. U. S. Atty., Indianapolis, Ind., for defendant.

STECKLER, Chief Judge.

The above entitled cause came on regularly for trial and the Court having duly considered the evidence together with the briefs of the parties, and being fully advised in the premises now finds the following:

Findings of Fact.

1. The plaintiffs are members and representatives of the interests of Local No. 171, Metal Polishers' Union and bring this action on behalf of themselves, Local No. 171, and all others similarly situated.

2. On June 15, 1953, Local No. 171 caused to be made and filed by the plaintiffs a tax return for the month of March, 1952 and paid to the defendant a wagering tax of $141.24.

3. On the June, 1953 assessment list the Commissioner assessed jointly and severally Local No. 171, James J. Howard and R. W. Stakley the sum of $141.24, representing wagering tax of $107.10, penalties for failure to file a timely return of $26.75 and interest of $7.39.

4. On June 17, 1953, Local No. 171 filed or caused to be filed by the plaintiffs a timely claim for refund alleging that the sum of $141.24 was erroneously assessed and collected from Local No. 171, as wagering tax for the month of March, 1952. On June 26, 1953 the defendant notified Local No. 171 by registered mail of the rejection and disallowance of said claim for refund, and this suit was instituted within the time allowed by law.

5. This Court has jurisdiction to hear and determine this case.

6. On March 3, 1952, James J. Howard and R. W. Stakley entered into a written contract with Local No. 171, Metal Polishers' Union, which agreement purported to employ Howard and Stakley at a salary of $9,000 each per annum for a period of five years to raise funds with which to erect a new Union home. The method of fund raising was left to the discretion of Howard and Stakley, but all parties to the contract agreed that a numbers lottery or weekly pool was to be established and operated, contrary to the laws of Indiana. The parties to the contract signed on March 3, 1952, provided by collateral agreement that annual net proceeds in any amount not to exceed $36,000 would be divided one-half to Howard and Stakley, and the other one-half to Local No. 171. The agreement further provided that Howard and Stakley were to pay any and all operating losses and otherwise to bear the risk of the venture. Howard and Stakley orally agreed to finance the lottery and, pursuant thereto, Howard contributed capital in the amount of $800 and Stakley made contributions to capital in the total amount of $5,000. These contributions were in cash and no written evidence thereof was either requested or received.

7. During the one-year period of lottery operations, Howard and Stakley, shared joint control and voice in the management of the lottery with the officials of Local No. 171.

8. While the lottery was in operation, net proceeds therefrom inured to Stakley and Howard, and Local No. 171 received its share of net profit in the sum of $26,750.

9. The relationship existing between the Union on one hand, and Howard and Stakley on the other, was that of joint venturers and not that of employer-employees.

10. The joint venture operated from March 3, 1952 to March, 1953, and was terminated only because the Commissioner ruled that the 10 per cent excise tax would be assessed on gross receipts from the lottery which aggregated $227,512.-50.

11. During the one-year period the illegal lottery was operated, the only other source of Union income was from dues-paying members who paid into the Union treasury approximately $10,500, which amount was less that 5 per centum of its gross income from the lottery operations.

12. The lottery was a business substantially unrelated to the exercise or

performance by Local No. 171 of the functions and purposes for which it was granted tax exemption, and its primary purposes were made secondary in importance to the business of gambling.

13. In respect to the assessment of the penalty, the Court finds that on April 14, 1952, the President of the Metal Polishers' Union received a letter over the signature of Ralph W. Cripe, the then Collector of Internal Revenue, advising him, in connection with the "building fund" then under organization by the Union, that it was " * * * the opinion of this office that inasmuch as your organization is exempt from income tax and if no part of such drawing inures to any private shareholder or individual that the wagering tax would not apply."

14. The Union relied on the letter of April 14, 1952 in failing to file a return of wagering excise taxes for the month of March, 1952 on or before April 30, 1952.

15. On December 17, 1952, Gary Campbell, the succeeding Director of Internal Revenue, wrote the Union to the effect that it was the opinion of his office that the Union was not exempt from wagering excise tax.

16. Subsequent to the receipt of the letter of December 17, 1952, attorneys and other representatives of the Union conferred with representatives of the Bureau of Internal Revenue in Indianapolis and in Washington concerning the liability of the Union for wagering excise taxes. Attorneys for the Union sent a letter to Gary Campbell on February 9, 1953, and submitted the affidavit of Harold A. Goodman on March 2, 1953.

17. On May 7, 1953, the head of the Technical Rulings Division of the Bureau of Internal Revenue transmitted to Campbell the opinion of his office that the Union was not exempt, and a copy of this ruling was mailed to the Union May 15, 1953.

18. The failure of the Union to file a timely return of wagering excise taxes for the month of March, 1952 was due to reasonable cause and not due to willful neglect.

19. The plaintiffs are entitled to recover from defendant the sum of $26.75.

## Conclusions of Law.

From the foregoing facts the Court concludes:

1. This Court has jurisdiction of the subject matter and parties thereto.

2. Section 3285(a), Internal Revenue Code, 26 U.S.C.A. § 3285(a), effective November 1, 1951, imposes on "lotteries" an excise tax of 10 per cent, and subsection (b) (2) (B) thereof provides that the term "lottery" does not include "any drawing conducted by an organization exempt from tax under section 101, if no part of the net proceeds derived from such drawing inures to the benefit of any private shareholder or individual."

3. The term "drawing", as used in Section 3285(b) (2) (B), supra, does not exempt from the excise tax a section 101 organization which engages in a lottery of such scope and unlimited duration that the purposes for which the income tax exemption was granted become secondary in importance to the business of gambling.

4. Where, as here, the drawing is of such scope and magnitude as to constitute a business substantially unrelated to the purposes and functions for which the exempt status is granted under Section 101 by legislative grace, the organization thereby exceeds its tax-exempt status as to the unrelated business income and is subject to the excise tax imposed by Section 3285(a), supra.

5. The Commissioner of Internal Revenue duly and lawfully assessed and the defendant properly collected the excise tax and interest for the month of March, 1952, under the provisions of Section 3285 and 3612(d) of the Internal Revenue Code, 26 U.S.C.A. §§ 3285,.3612 (d), however the law is with the plaintiffs on the recovery of amounts paid to defendant by reason of the penalties imposed by Section 3612(d) (1) of the Internal Revenue Code of 1939, as amend-

ed, with respect to the return of wagering excise taxes filed by the Union for the month of March, 1952.

6. Judgment should be entered in favor of the defendant in respect to the recovery of the tax and interest, and in favor of the plaintiffs in respect to recovery of the penalty.

7. The costs of this action shall be taxed against the plaintiffs.

Let judgment be entered accordingly.